OPINION
{¶ 1} Appellant Philip E. Kanner appeals his conviction on one count of murder. He was originally charged with one count of aggravated murder for shooting Steven Goddard twice with a 9mm Luger pistol. After the first shot, Appellant carefully reloaded the single shot weapon, stood over the victim, and fired again. Following a jury trial in the Monroe County Court of Common Pleas, Appellant was convicted on the lesser charge of murder and was sentenced to fifteen years to life in prison. Appellant asserts two errors on appeal challenging whether he should have been tried, instead, on the lesser crime of voluntary manslaughter, which requires evidence of a sudden passion or sudden fit of rage brought on by serious provocation occasioned by the victim. Appellant contends that the court improperly excluded testimony establishing the victim's reputation for violence and Appellant's knowledge of that reputation. Appellant also argues that the trial court should have instructed the jury concerning voluntary manslaughter. It is clear from caselaw that the victim's reputation is not relevant to proving sudden passion or rage, particularly when it is clear that a sufficient cooling off period has elapsed between the alleged provocation and the murder. Since the trial court was correct in excluding the reputation and prior bad acts testimony of various defense witnesses, the court was also correct when it chose not to give a jury instruction on voluntary manslaughter. Therefore, the judgment of the Monroe County Court of Common Pleas is affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 2} On June 26, 2003, Appellant twice shot Steven Goddard with a World War II era 9mm Luger pistol. The crime took place in Clarington, Ohio, in Monroe County. The men had formerly been friends, but the relationship had deteriorated in the two years prior to the shooting.
 {¶ 3} Appellant was indicted on July 17, 2003, on one count of aggravated murder. Trial began on May 25, 2004. An eyewitness to the crime, Nathan Tucker, testified that he saw Appellant arguing with the victim and heard him call the victim a liar. (Trial Transcript Volume III, p. 23; hereinafter, the trial transcript will be referenced by "Tr." and the volume number.) The victim got out of his car and shoved Appellant, who stumbled backwards. Appellant then turned around and displayed a pistol. Appellant shot the victim once from a distance of 12 to 15 feet. (Tr. III, p. 24.) The victim had been standing still and had no weapon when he was shot. After the first shot was fired, the victim fell, and Appellant reloaded the gun and fired again. Appellant then picked up the empty casing and put the gun away. As he walked up the street Appellant stated that he had killed Goddard and that somebody should call the law. (Tr. III, pp. 26-27.)
 {¶ 4} Deputy Shreves testified that he responded to calls about the shooting and found Appellant walking down one of the nearby streets. (Tr. III, p. 42.) Appellant yelled "I shot him, I shot him, I'm over his shit." (Tr. III, p. 46.) Appellant showed Deputy Shreves where he had put the gun. The gun was a single shot Luger that had no magazine. The gun had to be manually reloaded by pulling the slide back and loaded with an individual live round, and then reclosed for firing again.
 {¶ 5} Appellant subsequently made a videotaped statement that was entered into evidence. In it, he calmly described the shooting in detail. His statement reveals that he had been working at a house in Clarington, when he noticed a car that had belonged to his mother. The car was sold to Goddard for $1600, who was supposed to make installment payments of $50 per month. Goddard made no payments for over a year. On seeing the car, Appellant went home to retrieve his Luger, put a round in the chamber, and waited for Goddard to come down the hill in the car. Appellant approached the car and asked Goddard when he was going to pay for the car. Appellant also referred to items that Goddard had allegedly stolen from Appellant in May of 1995. At this point in the altercation a third man, Mr. Tucker, walked by and asked what was happening. Appellant said that Goddard was "a lying sack of shit." Goddard got out of the car and shoved Appellant, who then turned and pointed the gun at Goddard. Appellant stated that he shot Goddard, loaded another round into the Luger, and shot again. (Tr. III, p. 79.)
 {¶ 6} After the shooting, Appellant walked home, stashed the gun behind a tree in some weeds, and fed his cats. He took a soda out of the refrigerator, and began walking down the street, until he was met by Deputy Shreves.
 {¶ 7} In addition to Mr. Tucker, Jeffrey Morris was another eyewitness to the shooting. He testified that Appellant shot the victim, stood over him, cocked the weapon, and then shot again. (Tr. III, p. 169.)
 {¶ 8} Appellant's brother, John W. Kanner, Jr. testified he sold his mother's car to the victim, who made no payments after December 21, 2000.
 {¶ 9} The trial court permitted testimony by Monty Brooks and Rusty Brooks about the victim's alleged prior drug usage and prior encounters with police. The court also permitted Deputies Anthony Labuda and Casey Deitrich to testify regarding prior complaints made by Appellant about Mr. Goddard.
 {¶ 10} The court prohibited testimony by Kenneth Hartline, a probation officer, as to his opinion of the violent reputation of the victim. The court also prohibited testimony by Timothy Haught concerning prior alleged criminal acts of the victim relating to a forged prescription and testimony of Charles Storey, who was allegedly assaulted without provocation by Mr. Goddard.
 {¶ 11} The jury acquitted Appellant of aggravated murder, but convicted him on the lesser charge of murder, in violation of R.C. § 2903.02. On June 4, 2004, the court sentenced Appellant to fifteen years to life in prison. The court set bond of $100,000 cash for purposes of appeal. This timely appeal was filed on June 23, 2004. Appellant presents two assignments of error on appeal, which will be treated together.
 ASSIGNMENT OF ERROR NOS. 1 AND 2 {¶ 12} "THE COURT ERRED IN EXCLUDING AS EVIDENCE TESTIMONY CONCERNING THE VICTIM'S CHARACTER AND THE DEFENDANT'S STATE OF MIND.
 {¶ 13} "THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY WITH THE INFERIOR OFFENSE OF VOLUNTARY MANSLAUGHTER"
 {¶ 14} Appellant argues that he was prevented from proving the mitigating circumstances that make up some of the elements of the crime of voluntary manslaughter, found in R.C. § 2903.03:
 {¶ 15} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.
 {¶ 16} "(B) Whoever violates this section is guilty of voluntary manslaughter, a felony of the first degree."
 {¶ 17} Voluntary manslaughter is an inferior degree offense of murder, meaning that the elements of the crime of voluntary manslaughter are contained within the offense of murder, except for one or more additional mitigating elements. State v. Shane
(1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. The additional mitigating factors in voluntary manslaughter are that the killing was committed, "while under the influence of sudden passion or in a sudden fit of rage, * * * brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *." R.C. 2903.03(A). Sudden rage or passion has been described as, "anger, hatred, jealousy, and/or furious resentment." State v. Harris (1998),129 Ohio App.3d 527, 535, 718 N.E.2d 488.
 {¶ 18} Both an objective and subjective test is used to determine whether the jury may consider the lesser offense of voluntary manslaughter. State v. Shane (1992),63 Ohio St.3d 630, 634-635, 590 N.E.2d 272. First, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id. at 635. Second, if that objective test is met, the defendant must show that in this particular case he was actually under the influence of sudden passion or in a sudden fit of rage. Id. at 634. In determining whether this subjective test has been satisfied, "the emotional and mental state of the defendant, as well as the conditions and circumstances that surrounded the incident in question, must be considered." State v. Prim (1999), 134 Ohio App.3d 142, 152,730 N.E.2d 455.
 {¶ 19} If the defendant is charged with murder or aggravated murder but wishes a jury instruction on voluntary manslaughter, the burden is on the defendant to prove the mitigating factors of voluntary manslaughter:
 {¶ 20} "[I]f a defendant on trial for murder or aggravated murder (or the prosecution in such trial) produces evidence of one or both of the mitigating circumstances set forth in R.C.2903.03, that evidence will be sufficient to entitle a defendant to an instruction on voluntary manslaughter as an inferior degree of murder if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." State v. Rhodes
(1992), 63 Ohio St.3d 613, 617-618, 590 N.E.2d 261.
 {¶ 21} Appellant contends that the victim's reputation for violence, and Appellant's state of mind with respect to the victim's character for violence, are relevant to proving voluntary manslaughter. Appellant quotes certain Committee Comments to R.C. § 2903.03 to make this point:
 {¶ 22} "Legislative Service Commission
 {¶ 23} "1973:
 {¶ 24} "This section defines an offense analogous to the former crime of voluntary manslaughter, with two important changes.
 {¶ 25} "First, former law required that the slaying be intentional, whereas this section requires that it be committed knowingly. Since proof of purpose also constitutes proof of knowledge, however, voluntary manslaughter remains a lesser included offense to both aggravated murder and murder. For example, in the trial of a charge of aggravated murder, if the jury finds that the killing was purposely done, but was not done with prior calculation or design or under circumstances constituting felony murder, it would be bound to return a verdict of guilty of murder. If, in addition, the jury found that the killing was done while the offender was under extreme emotional stress brought on by substantial and adequate provocation, the jury would be bound to return a verdict of guilty of voluntary manslaughter.
 {¶ 26} "Second, the former offense of voluntary manslaughter contemplated killings done in a sudden fit of rage or passion.This section includes such killings, but also includes homicidesdone while under extreme emotional stress which may be the resultof a build-up of stress over a period of time. Both the former law and this section require that the offender's emotional state be the result of sufficient provocation." (Emphasis added.)
 {¶ 27} Appellant believes that he was permitted to prove that he was under extreme emotional stress that had built up over time, as described by the Committee Comments. It must immediately be pointed out that Appellant is relying on Committee Comments to a former version of the voluntary manslaughter statute to establish his argument. The Committee Comments that Appellant cites are from 1973, and in that revision of R.C. § 2903.03, the words "extreme emotional stress" were included in the statute, and "sudden passion" or "sudden rage" were not. In 1982, though, the words "extreme emotional stress" were removed and the statute was substantially changed to the form that currently exists. Thus, a later comment to R.C. § 2903.03 states: "A 1982 amendment of this section changed the language `while under the influence of extreme emotional stress' to `while under the influence of sudden passion or in a sudden fit of rage.' The Committee Comment to H 511 should be read in light of this amended language." The caselaw after 1982 generally reflects that "sudden passion" or "sudden fit of rage" is the standard for establishing voluntary manslaughter, and not extreme emotional stress built up over time.
 {¶ 28} More importantly, any passion or rage felt by an offender who has had time to cool off does not qualify for "sudden passion" or "sudden fit of rage" under the current voluntary manslaughter statute. The caselaw dealing with the "cooling off" period indicates that it is a very short time span. One case held that a sufficient cooling off period that had occurred in the few hours between a phone call, in which the defendant heard that someone was sleeping with his girlfriend, and the time of the murder. State v. Huertas (1990),51 Ohio St.3d 22, 23, 553 N.E.2d 1058. The time it takes to drive home and retrieve a weapon is a sufficient cooling off period. Statev. Townsend, 7th Dist. No. 04 MA 110, 2005-Ohio-6945. The time it takes to walk one-half mile home is a sufficient cooling off period. State v. Byerly, 5th Dist. No. 02-CA-81,2003-Ohio-6911. A person who was attacked and beaten had a sufficient cooling off period when he had time to clean himself up, recruit his brother and nephew, and break into the victim's home prior to the murder. State v. McClelland (April 21, 1999), 9th Dist. No. C.A. 18894.
 {¶ 29} In the past, we have recognized that the few seconds it takes to reload or readjust one's weapon indicates a sufficient cooling off period: "the fact that Appellant shot the victim in the head and then stood over the victim and shot him multiple times after that tends to show cool deliberation and not sudden passion." State v. Shakoor, 7th Dist. No. 01CA121, 2003-Ohio-5140, ¶ 105; see also State v. Crago (1994),93 Ohio App.3d 621, 644, 639 N.E.2d 801.
 {¶ 30} We are not persuaded by Appellant's argument primarily because the law surrounding voluntary manslaughter clearly changed in 1982, and most courts have acknowledged this change, either expressly or implicitly. For example, the Tenth District Court of Appeals stated:
 {¶ 31} "While appellant relies extensively on this court's decision in State v. Roddy (Nov. 17, 1981), Franklin App. No. 81AP-499, unreported, 1981 WL 3600, for the proposition that fear for one's own safety is sufficient to warrant a voluntary manslaughter instruction, that reliance is misplaced. At the timeRoddy was decided, the voluntary manslaughter statute required only that the defendant establish that he was `under extreme emotional stress.' See id. at 3. However, given that voluntary manslaughter now requires that the defendant be under the influence of `sudden passion or fit of rage,' the position advanced by appellant and supported by Roddy cannot now be maintained. See Tantarelli and Thompson, supra. Simply put, `[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.' State v. Mack (1998), 82 Ohio St.3d 198, 201,694 N.E.2d 1328, 1331 (upholding refusal to grant an aggravated assault instruction when defendant testified that he acted out of self-defense)." State v. Harris (1998), 129 Ohio App.3d 527,535, 718 N.E.2d 488; see also State v. Loyed, 8th Dist. No. 83075, 2004-Ohio-3961.
 {¶ 32} Any testimony Appellant intended to introduce, and that the trial court excluded, must be viewed in the context of the current voluntary manslaughter statute. With that in mind, we will proceed to review the specific testimony Appellant believes was improperly excluded from trial. Appellant wished to have Jeffrey Morris testify about a specific event he observed in October of 2002 involving Mr. Goddard and Appellant. (Tr. III, pp. 181-183.) Mr. Morris is the mayor of Clarington, a paramedic, and a barber in town. Mr. Morris testified extensively about the murder since he was an eyewitness and came to Mr. Goddard's aid after the shooting. He also testified that he had known both Appellant and the victim for many years, and knew that they were friends at one time and even vacationed together. (Tr. III, p. 178.) Mr. Morris began relating an incident from 2002, in which he saw Appellant walking on the street while Goddard was driving at a high rate of speed nearby. The testimony was halted to discuss whether Mr. Morris was about to relate hearsay evidence concerning Appellant's thoughts. Mr. Morris was not permitted to give hearsay evidence, but continued to testify that Goddard drove around Appellant's house and continuously honked his horn between 2:30-3:00 a.m.
 {¶ 33} Appellant contends that Mr. Morris would have testified as to Appellant's state of mind during that incident, but there is no proffered testimony in the record. Appellant contends that this supposed testimony would not have been hearsay and would have been relevant to proving voluntary manslaughter.
 {¶ 34} Appellant also argues that certain testimony of Kenneth Hartline was improperly excluded. Mr. Hartline was a former deputy sheriff and currently a probation officer. Mr. Hartline began testifying about his relationship with the victim. The state objected. (Tr. IV, p. 156.) A sidebar took place in which the attorneys discussed whether the reputation of the victim could be introduced into a murder case. The state argued that, under Evid.R. 404 and 405, reputation evidence is generally not permitted at trial. The trial judge cited State v. Allen
(1995), 73 Ohio St.3d 626, 653 N.E.2d 675, to show that evidence about the victim is generally impermissible at trial unless it relates specifically to the crime. As stated in Allen: "Evidence about a victim is admissible when it relates directly to the circumstances of the crime and is not offered to elicit sympathy from the jury. State v. Williams (1988),38 Ohio St.3d 346, 354, 528 N.E.2d 910, 919-920. The evidence that [defendant] Allen complains about was not offered to elicit sympathy from the jury; rather, the testimony related directly to the circumstances of the murder and the robbery." Id. at 633. Although Appellant asserts on appeal that there is no such Allen case, it is clear that the case does exist, that the trial court knew the case and that it contains law relevant to this appeal.
 {¶ 35} Appellant subsequently proffered testimony from Mr. Hartline that attempted to establish that Goddard was suspected of illegal activity and had a reputation for violence, anger, and disliking policemen. (Tr. IV, p. 168.)
 {¶ 36} Appellant also proffered the testimony of Charles Storey, a man who lived about two miles from Goddard. (Tr. V, p. 73.) Storey intended to testify that in July of 2002, Goddard stopped him on the road, was argumentative and abusive, pulled him from his car, and assaulted him without provocation. No criminal charges were ever filed on this matter. Appellant's counsel believed that this testimony would show Goddard's reputation for violence, and show that Appellant was afraid of Goddard, particularly with regard to collecting the overdue account for the purchase of Appellant's mother's car. (Tr. V, pp. 74-75.)
 {¶ 37} On this issue, Appellant called Timothy Haught to testify. Haught was an attorney and prosecutor from West Virginia. Haught testified about the sale of Appellant's mother's car to Goddard. During the testimony, Appellant's counsel began to ask Haught a question concerning previously illegal activities of Goddard. The state objected and argued as follows:
 {¶ 38} "MR. RIETHMILLER: Your Honor, my concern obviously is what we're doing here is just allowing Mr. Haught to say anything he knows about Mr. Goddard. Any bad things or other acts which are strictly limited by Evidence Rule 404 in their use. Specifically, the state had raised its objection regarding the use of character evidence, and under subsection (b) of that section, we're talking about other acts.
 {¶ 39} "And what we're talking about there is the possibility of admitting other acts evidence as against — for specific reasons — as against an individual, and none of those apply.
 {¶ 40} "We're talking here about the victim here, not the defendant. The state of mind of the defendant in this case is not an issue here that the evidence should be offered — those specific other acts should be offered for, as the reasons we've previously stated. This certainly isn't a case of self defense. There's been no evidence offered at this point either as to an objective basis for determining that there was provocation sufficient to elicit from the defendant in this case sudden rage for voluntary manslaughter, and so if we're talking about other acts involving Mr. Goddard, and not as far as the state of mind of the accused here, we may be in a different situation, but I don't thing it's appropriate to just let Mr. Haught say — and I don't know for sure what he's going to say, but I'm presuming he's going to say we had various complaints filed in Wetzel County * * *." (Tr. V, pp. 14-15.)
 {¶ 41} Appellant's counsel stated that Mr. Haught was planning to testify he told Appellant that Goddard beat up Charles Storey, that he had asked the Monroe County Prosecutor to bring charges against Goddard, and that Goddard was charged with forging prescriptions for OxyContin. (Tr. V, p. 15.). Counsel argued that this testimony was not being offered to establish the character of the victim, but rather, to show Appellant's state of mind at the time of the crime. (Tr. V, p. 16.) The trial court concluded that this testimony by Mr. Haught was intended to portray Goddard as a bad person who deserved to be murdered. The testimony was excluded. It was later proffered into the record. (Tr. V, pp. 72ff.)
 {¶ 42} The admission or exclusion of evidence is generally a matter resting within the trial court's sound discretion, and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343.
 {¶ 43} As Appellee and the trial court correctly concluded, the evidence that Appellant wanted to introduce was irrelevant to proving voluntary manslaughter, and irrelevant evidence is rightfully excluded under Evid.R. 403. The evidence is irrelevant because it was proffered to establish extreme emotional stress built up over a long period of time, which is no longer part of the voluntary manslaughter statute. Furthermore, whether or not the proffered testimony might be relevant to establish one or more elements of voluntary manslaughter, such evidence would still have been correctly excluded under other rules of evidence, particularly Evid.R. 404 and 405. Evid.R. 404 states:
 {¶ 44} "(A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 45} "(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
 {¶ 46} "(2) Character of victim. Evidence of a pertinenttrait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable." (Emphasis added.)
 {¶ 47} The trial court did not believe that Mr. Goddard's character for violence was pertinent to Appellant's attempt to establish the elements of voluntary manslaughter. Mr. Goddard's reputation was not pertinent because it did not plausibly relate to Appellant's sudden passion or sudden rage. As cited above, courts have universally held that there can be no finding of sudden passion or rage if the defendant had a cooling off period.
 {¶ 48} A voluntary manslaughter instruction is properly denied when the only reasonable interpretation of the evidence shows there was a purposeful killing. For example, in State v.Carter, the Ohio Supreme Court held that: "[Defendant] Carter's request for a voluntary manslaughter instruction was properly denied, since the evidence, including that the victim was stabbed eighteen times, fully supported a purposeful killing." State v.Carter (2000), 89 Ohio St.3d 593, 602, 734 N.E.2d 345.
 {¶ 49} The allegedly provocative events cited by Appellant took place years before the murder of Mr. Goddard, and such a lengthy time period more than qualifies as a cooling off period for the initial shot. Even the period of time after the first shot when Appellant reloaded his gun was a sufficient cooling off period, and none of the evidence proffered by Appellant has any relevance towards proving sudden passion or rage after the first shot was fired and before the second shot was fired.
 {¶ 50} The record does indicate that Appellant and Goddard may have had an argument shortly before the murder. Courts have consistently held that rarely, if ever, will the victim's words be treated as sufficient provocation to justify deadly force. Appellant also indicates that Goddard shoved him immediately before the shooting. It is well-established, though, that pushing, shoving, and unarmed hitting do not constitute sufficient provocation to excuse the use of deadly force. See, e.g., State v. Oviedo (1982), 5 Ohio App.3d 168, 174-175,357-359, 450 N.E.2d 700 (Sixth District) (use of a headlock while wrestling is not sufficient provocation to stab the victim);State v. Collins (1994), 97 Ohio App.3d 438, 445,646 N.E.2d 1142 (Eighth District) (deadly force not warranted after victim used fists and an umbrella to hit the defendant); State v.Torres (Mar. 18, 2002), 3rd Dist. No. 4-01-06 ("the fact that such threats are coupled with initial unarmed physical aggression is generally not sufficient to incite a reasonable person to use deadly force.").
 {¶ 51} Courts have also held that the defendant's fear of the victim is not sufficient to establish sudden passion or rage:
 {¶ 52} "[P]ast incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. In this case, there is no evidence that any past incidents provoked appellee into a sudden passion or fit of rage.
 {¶ 53} "The evidence clearly shows that Mack stabbed Chris after chasing him across the street and over a car. Mack knew that Chris was unarmed and was retreating, and that Katrina had control of the Mace which Chris had dropped. Nevertheless, he continued to pursue Chris. Mack testified that he was afraid at the time, but the record contains no evidence that the defendant's actions were influenced by a sudden passion or fit of rage at the time of the incident. Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." (Citations omitted.) State v.Mack (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328.
 {¶ 54} Most of the cases cited by Appellant referring to "extreme emotional stress" harken back to the pre-1982 version of the voluntary manslaughter statute, and are not applicable to the current statute, at least not for Appellant's purposes. One case cited by Appellant illustrates quite well why emotional distress caused by long past provocation is usually irrelevant for establishing voluntary manslaughter: State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294. Deem involved aggravated assault rather than voluntary manslaughter, but the statutory language regarding provocation in both crimes is so similar that the reasoning in Deem is often applied to voluntary manslaughter cases. One of the holdings in Deem is that evidence of provocation must refer to provocation at the time of crime, and not to prior provocation: "The only evidence presented at trial of provocation of appellee Deem by the victim was the historically stormy relationship between the two and the alleged `bumping' of Deem's car by the victim with her car. Neither of these remote and minor incidents was reasonably sufficient, as a matter of law, to incite or arouse appellee into repeatedly stabbing the victim, particularly given the time for reflection between the `bumping' and the stabbing, and given the circumstances of appellee's lying in wait for the victim to pass by in her car." Id. at 211. The types of facts that were declared irrelevant to prove provocation in Deem are the very same types of irrelevant facts that Appellant was attempting to introduce into evidence and that were properly excluded by the trial court.
 {¶ 55} Mr. Goddard's character might have been pertinent had Appellant been attempting to prove self-defense, but that was never an issue at trial. "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger."State v. Robbins (1979), 58 Ohio St.2d 74, 12 O.O.3d 84,388 N.E.2d 755, paragraph two of the syllabus. In proving self-defense, the victim's reputation for violence may have an impact on the defendant's belief as to whether he was presented with imminent danger. This was not raised at trial in the present matter and is not being argued on appeal.
 {¶ 56} Even if Appellant had been attempting to introduce facts to support a self-defense theory, he was not permitted to do so by referring to specific instances of the victim's conduct. Evid.R. 405 states:
 {¶ 57} "(A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 58} "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 59} The Ohio Supreme Court has held that: "Although a victim's violent propensity may be pertinent to proving that he acted in a way such that a defendant's responsive conduct satisfied the elements of self-defense, no element requires
proof of the victim's character or character traits. A defendant may successfully assert self-defense without resort to provingany aspect of a victim's character. Therefore, Evid.R. 405(B) precludes a defendant from introducing specific instances of the victim's conduct to prove that the victim was the initial aggressor." (Emphasis in original.) State v. Barnes (2002),94 Ohio St.3d 21, 24, 759 N.E.2d 1240.
 {¶ 60} There is a certain amount of balancing that the trial court must do when considering evidence that is intended to show sudden passion brought on by serious provocation. As the trial court in this case was aware, the introduction of evidence demonstrating serious provocation by the victim, by itself, will only give the impression that the victim somehow deserved to die, rather than providing mitigating evidence as to the reasons the defendant lost control of himself to the point of committing murder. With voluntary manslaughter, though, the serious provocation must be related to the element of sudden passion. Thus, evidence of long past provocation is not only irrelevant in establishing the mitigating circumstances of voluntary manslaughter (because it would tend to establish a cooling off period rather than sudden passion), it tends to mislead the jury and would unjustifiably excuse calculated and cold-blooded murder.
 {¶ 61} Appellant's second assignment of error concerning the trial court's failure to instruct the jury on involuntary manslaughter is based completely on the assumption that the trial court improperly excluded the testimony of the witnesses discussed earlier. It is clear that the trial court did not err in excluding that testimony, and thus, had no reason to instruct the jury concerning voluntary manslaughter. Once Appellant's first assignment of error is overruled, there is no basis to sustain the second assignment of error. Both assignments of error are hereby overruled and the judgment of the Monroe County Court of Common Pleas is affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.