[Cite as *State v. Mitchell*, 2016-Ohio-4801.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 14 JE 0028 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHAEL MITCHELL | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Jefferson County, Ohio
Case No. 13-CR-157

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Jane M. Hanlin
Prosecuting Attorney
Jefferson County Justice Center
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant: Atty. Bernard C. Battistel
P.O. Box 803
Steubenville, Ohio 43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 30, 2016

WAITE, J.

**{¶1}** Appellant Michael Mitchell appeals his June 17, 2014 conviction on charges of murder (an unclassified felony in violation of R.C. 2903.02(A)), a firearm specification, and tampering with the evidence (a third-degree felony in violation of R.C. 2921.12(A)(1)). Appellant contends that the jury's finding that he purposefully killed the victim is contrary to the manifest weight of the evidence. Appellant additionally argues that the trial court erroneously allowed a witness to testify to irrelevant and potentially prejudicial evidence. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}** Appellant and the victim were in a relationship and had been living together for approximately eight to ten months. They lived in a house with the victim's three children from a previous marriage. At some point before the incident, the victim had expressed to her ex-husband and her neighbor, both of whom testified at trial, that she was afraid of Appellant. She also said that she wanted to end their relationship but could not do so out of fear. (Tr. Vol. II, pp. 208, 289.) Appellant testified that he was aware of emails sent from the victim to her ex-husband which discussed her fear of Appellant and expressed a desire to end their relationship.

**{¶3}** On August 8, 2013, the victim fell asleep in her bed. (Tr. Vol. II, p. 187.) Her children fell asleep downstairs on the couch after watching a movie. At some point during the night, the victim's daughter awakened, went upstairs, and fell asleep in bed with the victim. Around three or four in the morning, Appellant shot the victim in the head with a .22 handgun with a silencer while she slept. Five to ten minutes

later, the daughter woke up to hear her mother vomiting. (Tr. Vol. III, p. 460.) The daughter looked to Appellant, who was awake, and asked him to take the victim to the hospital. Appellant refused and instructed her to let the victim go back to sleep, saying that he would check on her in the morning. The daughter left the room and went back downstairs to sleep.

{¶4} Around ten in the morning, Appellant told the children that he was going to the scrapyard and would be back in thirty minutes. (Tr. Vol. II, p. 190.) He told the children several times not to go into the victim's room. Shortly after Appellant left in his truck, the daughter went to the victim's room to ask if she could go to a friend's house. When the daughter attempted to open the door, she discovered that it was locked. She was able to pick the lock with a knife and open the door. Because the victim would not wake up, she asked one of her brothers to help her. After turning the victim over, they realized that she was dead and fled to a neighbor's house for help. The neighbor ran upstairs, checked the victim, and then called 911.

{¶5} Chief Clifford Utt was the first to respond to the scene. (Tr. Vol. I, p. 148.) Chief Utt went upstairs to check the body before calling for the coroner. Chief Utt spoke to the children and, based on their statements, began searching for Appellant. At some point, a woman called and told Chief Utt that she had seen a Facebook post describing Appellant and that she and her husband had just towed his truck. It is unclear why the truck required towing, but the woman informed Chief Utt that a .22 firearm with a silencer was sitting on the passenger seat. Several officers

from various police departments along with the U.S. Marshals went to the address provided by the woman. This address was the home of Appellant's uncle.

{¶6} After arriving at the house, the police encountered Appellant's uncle. (Tr. Vol. III, p. 400.) The police informed him that they were looking for Appellant and the uncle divulged that he "had a feeling" someone would be looking for his nephew. The police found Appellant sitting in the garage near a firearm. When the police asked him if he knew anything about a homicide in Jefferson County, Appellant replied "I might know a little bit about that." (Tr. Vol. III, p. 401.)

{¶7} Appellant told the officers that he had been toying with his gun when it discharged, striking his girlfriend in the head. He told the officers that he did not call for help because he did not think anyone would believe him. The officers arrested him without incident and searched his truck. They did not find the .22 firearm but did find a pistol, two Mac-10 fully automatic firearms, two M-4s, a bottle of chloroform, a package of potassium cyanide, numerous magazines, more than 8,000 rounds of ammunition, knives, and duct tape.

{¶8} Appellant's two-day trial commenced on June 12, 2014. Appellant admitted to shooting the victim but claimed that it was an accident. Appellant testified in his own defense, claiming that he could not sleep that night and got out of bed to give his snake some water. Afterwards, he started twirling his gun and it accidently discharged, striking the victim. Appellant admitted that he did nothing to help the victim himself and did not seek help from others. He admitted that he refused the daughter's request to take the victim to the hospital and that he told the children

several times not to go into the bedroom. He also admitted that he packed all of his belongings in his truck. He claimed that he was not attempting to escape but was intending to give his possessions away and kill himself.

**{¶9}** The jury found him guilty on all counts. The trial court proceeded immediately to sentencing, at Appellant's request. Appellant was sentenced to life in prison without the possibility of parole for fifteen years for the murder, six years of incarceration on the firearm specification, and three years on the tampering with evidence count. All sentences were ordered to run consecutively. This timely appeal followed.

<u>First Assignment of Error</u>

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S OBJECTION TO TESTIMONY RELATING TO DEFENDANT-APPELLANT WATCHING THE VICTIM'S DAUGHTER SLEEP.

**{¶10}** Appellant contends that the trial court erroneously allowed a witness to testify that Appellant would watch the victim's daughter sleep, and that he urinated out of her window. Appellant urges that the prejudicial nature of this testimony is highlighted by the court's own words that the alleged conduct was "a little pervert" and "sounds pretty awful." (Tr. Vol. II, p. 290.) Appellant argues that not only is this information prejudicial, it is also irrelevant, as the event occurred three to four months before the shooting and involved the victim's daughter, not the victim.

**{¶11}** The state argues in response that, although the trial court initially ruled that Appellant's behavior towards the daughter was irrelevant, once it was established this behavior led to problems in his relationship with the victim, the court deemed it relevant. Regardless, the state urges that even if the statement was improper, it was at worst harmless error, given the overwhelming evidence showing Appellant's guilt.

**{¶12}** The decision to admit or exclude evidence is within the trial court's sound discretion and the court's decision will not be disturbed absent a showing of an abuse of discretion. *State v. Kanner*, 7th Dist. No. 04 MO 10, 2006-Ohio-3485, ¶ 42, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Pursuant to Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶13}** "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *State v. Todd*, 7th Dist. No. 12 CO 28, 2015-Ohio-2682, ¶ 28, citing Evid.R. 403(A). Further, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶ 78, citing Evid.R. 404(B).

**{¶14}** In addition to describing Appellant's conduct towards the daughter and the victim's reaction, this witness also testified that she saw Appellant moving his

belongings out of the house shortly after the victim told her about Appellant's behavior. The state offered the testimony to show that Appellant's behavior had caused the victim to fear for her life and for the lives of her children. That fear led the victim to take steps towards ending the relationship. The first two times the state attempted to admit the testimony, the trial court determined that a foundation had not yet been laid to establish the deterioration of the relationship. However, once the witness testified that the victim had told her she feared Appellant, and that fear caused her to consider terminating the relationship, the court found that the foundation had been laid.

{¶15} The trial court determined that the testimony had become relevant because it was evidence that Appellant's conduct as to the daughter motivated the breakup, which in turn may have motivated the killing. While the court did acknowledge that Appellant's conduct could be viewed as "a little pervert" and "sounds pretty awful," the court determined that the testimony presented by this witness established motive, which outweighed any potential prejudice.

{¶16} Appellant's conduct, and the victim's reaction to it, supports the state's theory that the victim was afraid of Appellant and wanted to end the relationship. While a motive need not be shown, evidence of motive may aid a trier of fact in determining whether the shooting was purposeful or accidental. If Appellant's conduct caused the victim to take steps towards ending the relationship, and so motivated the shooting, it is evidence of motive and is relevant in this case. Even if it were not, in order to find error Appellant must demonstrate prejudice. Given the vast

amount of evidence and his own admissions, Appellant is unable to cite to any prejudice in this matter.

**{¶17}** "Generally, all evidence presented by the prosecution is prejudicial to the criminal defendant, and as the rule speaks only to prejudice that is unfair, there is a preference for admissibility." *State v. Tapscott*, 7th Dist. No. 11 MA 26, 2012-Ohio-4213, 978 N.E.2d 210, 217, ¶ 31. While it is possible the testimony may have had some prejudicial effect, there is nothing within the record to demonstrate that it actually impacted Appellant's case, particularly in light of the overwhelming evidence of Appellant's guilt. Any speculative prejudice is substantially outweighed by the relevance of a possible motive. Accordingly, Appellant's argument is without merit and is overruled.

<u>Second Assignment of Error</u>

THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE STATE DID NOT MEET ITS BURDEN OF PROOF WITH REGARD TO COUNT ONE MURDER.

**{¶18}** Appellant contends that the jury's finding he purposefully killed the victim is contrary to the manifest weight of the evidence. While Appellant concedes that he shot the victim and caused her death, he argues that the shooting was an accident. He argues that his behavior was negligent or reckless, but did not rise to the level of purposeful.

**{¶19}** In response, the state focuses its arguments on Appellant's behavior after the shooting. The state argues that he refused the daughter's request to take the victim to the hospital when she was vomiting. Evidence shows he went back to sleep after shooting the victim. He stayed in the house for approximately six or seven hours after shooting the victim and did nothing to help her. The state points out that he took the time to pack his belongings in his truck yet did not bother tending to the victim despite his knowledge that she was still alive after being struck by the bullet. The state highlights Appellant's admission that he spoke to several people, including a neighbor, after shooting the victim and did not request their help.

**{¶20}** In a manifest weight of the evidence review, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). A judgment should not be reversed when the factfinder could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. Andric*, 7th Dist. No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

**{¶21}** "It is well-established that "circumstantial evidence has the same probative value as direct evidence." *State v. Marsh*, 7th Dist. No. 12 MA 40, 2013-Ohio-2949, ¶ 11, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492

(1991). Here, the record is replete with competent and credible evidence that the killing was purposeful. Most importantly, there is Appellant's own testimony. Appellant has never denied shooting the victim nor does he deny that his bullet caused her death. Rather, he argues that the gun discharged while he was toying with it and a bullet hit the victim in the head accidentally. This record does not lend credence to Appellant's version of the events.

{¶22} The record clearly shows that Appellant failed to help the victim and also failed to seek help from others despite knowing that she was still alive. He concedes that the victim vomited about ten minutes after the shooting. Despite this, he failed to call 911 or seek help even though he had several opportunities. Appellant concedes that the victim's daughter asked him to take her to the hospital but he refused her request. He also conceded that he talked to a neighbor shortly after the shooting and not only failed to ask for help, but did not tell the neighbor what had happened. He also talked to two tow-truck drivers. He did not ask them for help, but spoke about the victim as if she was alive. Despite Appellant's own admission that he knew the victim was alive for some period after the shooting, it is clear that he chose not to help her or allow anyone else to help.

{¶23} While Appellant claimed that he did not call for help in the six to seven hours he remained in the house after the shooting because he was "shocked" and "scared," the evidence shows that he was calm and rational after the shooting. The record reveals that he locked the victim's bedroom door and ordered the children not to go into the room. He also packed all of his belongings into his truck and gave the

children a false story as to where he was headed. Testimony reflects that he appeared to be calm and normal to the neighbor he spoke to after the shooting and to the two tow-truck drivers. Further, the record shows that he apparently slept for at least a half-hour after shooting the victim.

{¶24} Not only did he fail to get help, Appellant also made efforts to stop others from discovering the victim and he took steps to allude arrest. In addition to locking the bedroom and ordering the children not to go into the room, he wiped the blood and vomit from the victim's face. He claims that he left the house not for purposes of fleeing arrest but to give his possessions to his friends and family before ending his life. However, by the time the police found him some nine to ten hours after the shooting, he was still at the address he was delivered by tow-truck and retained his possessions. Importantly, he also hid the gun involved and it has never been recovered. The tow-truck driver testified that a .22 caliber gun with a silencer was lying in the front seat of Appellant's truck when it was towed. Appellant admits that the gun had been on the seat. However, Appellant gave police eight different locations for the gun and it was not found at any of those locations. He also changed his clothes after the shooting and took the pajama pants he was wearing, which had gunshot residue on them, with him when he left.

{¶25} Finally, there is evidence of motive. While motive is not dispositive, it provided evidence that the shooting was not accidental. Appellant testified that he knew about emails sent from the victim to her ex-husband. The emails contained statements made by the victim such as "Ima break up with [Appellant] not sure what

he will do," "I'm sorry I'm thinking something bad going to happen I don't know what to do at all just wish had car 2 get away," and "I really can't talk 2 much on the phone like today took his house key and hid it when he woke up he noticed right away n found it." [sic passim]  (Tr. Vol. II, pp. 211-214.)  The state presented these emails as evidence of motive.  Motive, as earlier stated, is important to the question of whether the shooting was purposeful or accidental.

{¶26} In addition to Appellant's testimony, several other witnesses and experts presented an abundance of evidence as to his guilt.  At least two witnesses, the victim's ex-husband and neighbor, testified that the victim expressed her fear of Appellant.  Three neighbors and the victim's cousin also testified that Appellant had made several comments that he liked to get to know his prey and watch things die slowly.  Appellant also stated that he could kill without feeling remorse.  The record shows that the victim was present on at least one occasion when these comments were made, which may have added to her fear.

{¶27} Based on the testimony presented at trial, there is competent, credible evidence to support Appellant's conviction.  Accordingly, his arguments are without merit and the judgment of the trial court is affirmed.

### Conclusion

{¶28} Appellant contends that the trial court improperly allowed a witness to testify that he watched the victim's daughter sleep and urinated out of her window.  This evidence tended to show motive, thus was relevant, and its probative value outweighed any prejudice.  Appellant also challenges his conviction based on a

manifest weight of the evidence argument. However, the record is replete with competent and credible evidence supporting the jury's verdict. Accordingly, Appellant's arguments are without merit and are overruled. The convictions and sentences are affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.