**[Cite as *State v. Robinson*, 2021-Ohio-3255.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | Appellate Case No. 2021-CA-3 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2020-CR-221 |
| v. | : | |
| | : | (Criminal Appeal from |
| JASHON ROBINSON | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of September, 2021.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Jashon Robinson was found guilty by a jury of murder, felonious assault, and felony murder; these offenses were merged for sentencing, and Robinson was convicted of murder. On appeal, he contends that the jury should have found him guilty of the inferior offenses of voluntary manslaughter, aggravated assault, and involuntary manslaughter. Robinson also alleges that his trial counsel provided ineffective assistance of counsel.

{¶ 2} We conclude that the jury did not lose its way in rejecting the inferior offenses urged by Robinson and that Robinson fails to show that defense counsel performed deficiently. Therefore we affirm.

## I. Factual and Procedural Background

{¶ 3} On May 3, 2020, Robinson was walking on the sidewalk near Little Joe's Market in Springfield, Ohio. His cousin, Tyrone Clark, was sitting in a vehicle across the street, saw Robinson, and called him over. As Robinson crossed the street, Tyler Fullen drove past and saw him. Fullen made a U-turn, drove back, and stopped in the middle of the street. He jumped out of his vehicle and confronted Robinson. Without any apparent provocation, Fullen physically attacked Robinson. The two men fought, and Fullen ripped out a clump of Robinson's hair. Clark soon broke up the fight and separated the two men, and another man, Victor Bishop, got involved. Clark and Bishop stood between Fullen and Robinson, keeping them apart. Roughly 15 seconds later, with Clark and Bishop standing between Robinson and Fullen, Robinson pulled out a handgun and fired twice at Fullen. Clark and Bishop ran for safety, and Fullen fell to the ground. Robinson stepped forward and, standing over Fullen, shot him a third time. Robinson simply walked away.

Fullen was dead.[1]

{¶ 4} Robinson was indicted on one count of murder, in violation of R.C. 2903.02(A); felonious assault, in violation of R.C. 2903.11(A)(2); and felony murder, in violation of R.C. 2903.02(B). Each count included a firearm specification. Evidence supporting the above facts was presented to a jury. The evidence included witness testimony and video from a nearby surveillance camera that had recorded the entire confrontation. Robinson did not dispute what happened, but he maintained that he was guilty only of the lesser offenses of voluntary manslaughter under R.C. 2903.03, aggravated assault under R.C. 2903.12, and involuntary manslaughter under R.C. 2903.04, because Fullen's attack had provoked him and led him to shoot Fullen under the influence of passion or in a fit of rage. Robinson did not present any evidence supporting this defense.

{¶ 5} The jury charge included instructions on the three inferior offenses, but the jury rejected them; it found Robinson guilty on the indicted offenses of murder, felonious assault, and felony murder and on the firearm specifications. The offenses were merged for sentencing, and the State elected sentencing on the murder charge. The trial court sentenced Robinson to a total of 18 years to life in prison.

{¶ 6} Robinson appeals.

## II. Analysis

{¶ 7} In two assignments of error, Robinson brings evidentiary challenges and a claim of ineffective assistance of defense counsel.

---

[1] The coroner who autopsied Fullen testified that one of the first two shots hit Fuller's aorta, which was "the fatal wound" that killed him. (Tr. 220.)

## A. Evidentiary challenges

{¶ 8} The first assignment of error alleges:

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND/OR SUFFICIENT WEIGHT OF THE EVIDENCE AND THUS A VIOLATION OF DUE PROCESS.

{¶ 9} Robinson argues that the jury clearly lost its way by finding him guilty of purposeful murder, felonious assault, and felony murder rather than the inferior offenses of voluntary manslaughter, aggravated assault, and involuntary manslaughter.

{¶ 10} Sufficiency and manifest weight are different legal concepts. "A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial 'is legally sufficient to support the jury verdict as a matter of law.' " *State v. Worley*, Ohio Slip Opinion No. 2021-Ohio-2207, __ N.E.3d __, ¶ 57, quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219. "In contrast, a manifest-weight challenge 'concerns "the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other." ' (Emphasis sic.) *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *Thompkins* at 387, citing *State v. Martin*, 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} "Our criminal law recognizes that the provoked defendant is less worthy of blame than the unprovoked defendant, but the law is unwilling to allow the provoked defendant to totally escape punishment." *State v. Shane*, 63 Ohio St.3d 630, 635, 590 N.E.2d 272 (1992). R.C. 2903.03 defines the offense of voluntary manslaughter this way: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]" R.C. 2903.03(A). Accordingly, a defendant may mitigate a charge of murder to the inferior offense of voluntary manslaughter if the defendant establishes at least one of the two mitigating circumstances: "(1) sudden passion in response to serious provocation by the victim sufficient to incite the defendant to use deadly force, and (2) a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force." *State v. Rhodes*, 63 Ohio St.3d 617, 617, 590 N.E.2d 261 (1992), fn. 2. The jury "must find a defendant guilty of voluntary manslaughter rather than murder" if the State proves that the defendant knowingly killed the victim and the defendant proves "the existence of one or both of the mitigating circumstances." *Id.* at 617. *See also State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 153, citing *id.* at 620 ("[a] defendant being tried for murder must prove the elements of R.C. 2903.03(A) by a preponderance of the evidence").

{¶ 12} "The test for voluntary manslaughter includes both an objective and a subjective component." *Thompson* at ¶ 153. The jury must first determine "whether a serious provocation occurred and whether that provocation was 'sufficient to arouse the

passions of an ordinary person beyond the power of his or her control.' " *Id.*, quoting *Shane* at 634. Then the jury must decide "whether 'this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage.' " *Id.*, quoting *Shane* at 635. Whether there was a cooling-off period must be considered, because "any passion or rage felt by an offender who has had time to cool off does not qualify for 'sudden passion' or 'sudden fit of rage.' " *State v. Kanner*, 7th Dist. Monroe No. 04 MO 10, 2006-Ohio-3485, ¶ 28. If "the accused had reflected, deliberated or cooled between the time of provocation and the time the fatal stroke was given, or if there was time and opportunity for cooling, the killing was with malice and intent to kill." *State v. Muscatello*, 55 Ohio St.2d 201, 204, 378 N.E.2d 738 (1978).

{¶ 13} In this case, the circumstances are straightforward. Fullen launched an unprovoked attack on Robinson and managed to pull out a clump of Robinson's hair. The fight was soon broken up, and two men stood between Fullen and Robinson. Fifteen seconds after the fight ended, separated from Fullen by several feet and with two men standing between them, Robinson pulled out a gun and shot Fullen twice. Robinson then stepped forward and, standing over Fullen, shot him again. We note too that there was testimony that, when Robinson was interviewed by the police three days later, he did not complain of any injuries.

{¶ 14} We do not think that the jury lost its way by rejecting Robinson's claim that a mitigating circumstance existed. The jury could have decided that an unprovoked fight was not something "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." That is a judgment that the law permits the jury to make. *See Shane* at 635 ("The jury, because it has the ability to find the sufficiently provoked

defendant guilty of voluntary manslaughter, rather than murder, is able to exercise the value judgment provided by the law in these circumstances."). The jury also could have reasonably found that Robinson had not actually been aroused or that he had had time to cool off. The fight was short-lived and, other than the missing hair, Robinson was apparently not seriously injured. The fight had ended about 15 seconds before Robinson fired the first shots. There was a brief pause, and then Robinson shot Fullen again. Commenting on similar facts, the Seventh District has said that " 'the fact that Appellant shot the victim in the head and then stood over the victim and shot him multiple times after that tends to show cool deliberation and not sudden passion.' " *Kanner* at ¶ 29, quoting *State v. Shakoor,* 7th Dist. Mahoning No. 01CA121, 2003-Ohio-5140, ¶ 105. The appellate court held that "the few seconds it takes to reload or readjust one's weapon indicates a sufficient cooling off period." *Id.*

{¶ 15} In the end, we conclude that the jury did not lose its way in finding that Robinson had failed to meet his burden to prove his claim of a mitigating circumstance. He did not present any evidence, and his "failure to produce evidence in support of the inferior offense cannot then be used as a sword" to undo his conviction. *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503, ¶ 13 (8th Dist.). Although Fuller's actions were intolerable, "[his] assault was not grounds for an execution." *Id.* at ¶ 27. This is not the exceptional case in which the trier of fact lost its way and created a manifest injustice.

{¶ 16} The first assignment of error is overruled.

### B. Ineffective assistance of counsel

{¶ 17} The second assignment of error alleges:

DEFENSE COUNSEL'S CUMULATIVE ERRORS CONSTITUTES [SIC]

INEFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND OHIO CONSTITUTION.

{¶ 18} Robinson argues that defense counsel was ineffective by failing to prepare for trial adequately, failing to present a complete defense, and filing an inadequate Crim.R. 29 motion for acquittal.

{¶ 19} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, __ N.E.3d __, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because of the inherent difficulties in making the first determination, a court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. Thus, judicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 692 N.E.2d 1013 (1998), citing *Strickland* at 689. *See also State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), citing *Strickland* at 689.

{¶ 20} Robinson argues that defense counsel was ineffective in failing to prepare for trial adequately and failing to present a complete defense. Specifically, Robinson argues that counsel failed to cross-examine the State's witnesses effectively and to elicit key information from them. "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. Robinson does not give any example of counsel's allegedly ineffective cross-examination, and it is

not clear to us what, if any, key information Robinson's trial counsel failed to elicit from the State's witnesses.

{¶ 21} Robinson also argues that defense counsel failed to prevent the admission of photographs that Robinson says were irrelevant and prejudicial. These photographs contain images of Fullen's body at the crime scene and during his autopsy. Robinson contends that "counsel had a duty to ensure that the evidence in the case as presented to the jury was not improper, irrelevant, or prejudicial."

{¶ 22} We disagree with this contention because "the decision to either admit or exclude relevant photos is committed to the sound discretion of the trial court." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 20. All counsel can do is object to the admission of a particular piece of evidence, and defense counsel did that in this case.

{¶ 23} The essence of Robinson's contention appears to be that the trial court abused its discretion by admitting the photographs, but we disagree. The admission of photographs is governed by Evid.R. 403(A), which provides that a court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." "When determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *Lakes* at ¶ 20, citing *State v. Frazier*, 73 Ohio St.3d 323, 333, 652 N.E.2d 1000 (1995). The trial court reviewed the photographs and admitted them over defense counsel's objection that they were inflammatory and redundant. We have viewed the photographs and we find no abuse of

discretion in the trial court's decision to admit them. The photos established the scene of incident and showed the locations of the gunshot wounds. The trial court reasonably concluded that their probative value outweighed any prejudicial effect.

{¶ 24} Robinson next argues that counsel should have presented evidence. Part of this argument includes Robinson's contention that defense counsel did not investigate the case adequately. In death penalty litigation " '[d]efense counsel has a duty to investigate the circumstances of his client's case and explore all matters relevant to the merits of the case and the penalty, including the defendant's background, education, employment record, mental and emotional stability, and family relationships.' " *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, __ N.E.3d __ ¶ 154, quoting *Goodwin v. Johnson*, 632 F.3d 301, 318 (6th Cir.2011). "Failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing may constitute ineffective assistance of counsel." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, __ N.E.3d __ ¶ 154, citing *Wiggins v. Smith*, 539 U.S. 510, 521-522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Although this was not a death penalty case, Robinson had the burden of demonstrating that his counsel rendered ineffective assistance by failing to conduct an adequate investigation. *See Grate* at ¶ 154.

{¶ 25} In *Strickland*, a case involving a contention that counsel did not reasonably investigate nonstatutory mitigating circumstances before a death penalty was imposed, the Supreme Court observed "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690. " 'Attorneys need not pursue every conceivable avenue; they are entitled to be selective.' " *State v. Murphy*, 91 Ohio St.3d 516, 542, 747 N.E.2d

765 (2001), quoting *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir.1993). The record here simply does not show that defense counsel did not investigate something that should have been investigated. Robinson says that defense counsel should have investigated his psychological state, but there is no suggestion in the record that Robinson had any relevant psychological problems to investigate. "[W]e cannot infer a defense failure to investigate from a silent record." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 244.

{¶ 26} As to Robinson's contention that counsel should have presented evidence in support of his defense, we note that " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable * * *.' " *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), quoting *Strickland* at 690.   "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). Robinson argues that counsel should have called witnesses to testify about matters like Fullen's aggressive nature and how much strength it takes to pull out someone's hair. Robinson also argues that counsel should have presented mitigating evidence supporting his claim of sudden passion or rage like his family, social, mental, and physical history. According to Robinson, defense counsel should have presented evidence linking Robinson's behaviors after the shooting to characteristic behaviors of anger, rage, or sudden passion.

{¶ 27} Ultimately, nothing in the record shows that defense counsel's decision not to present evidence was the result of an inadequate investigation or other deficient performance. The record simply does not show that mitigating evidence even existed.

Even assuming that it did, whether defense counsel should have presented it bears on his trial strategy, and Robinson fails to convince us that counsel's strategy was constitutionally deficient. We note that defense counsel's opening and closing statements, as well as his cross-examination of Clark, show that counsel did try to convince the jury that Robinson acted out of rage, telling the jury during closing arguments that "Clark's evidence clearly indicates that he [Robinson] was beaten savagely, violently, for no reason and was under the influence of passion and rage when he fired the shots that killed Mr. Fullen." (Tr. 295.) And counsel attempted to highlight Fullen's aggressive nature using Clark's testimony of the "beat-down" and by referring to Fullen's blood-alcohol level, as well as Robinson's torn out hair.

{¶ 28} Robinson also argues that the Crim.R. 29 motion for acquittal that defense counsel made was inadequate. At the close of the State's evidence, counsel simply asked for acquittal under Crim.R. 29, saying, "[t]hat's all I have, Judge. No argument." (Tr. 269.) The "failure to make a Crim.R. 29 motion for acquittal is not ineffective assistance when such a motion would have been futile." *Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, __ N.E.3d __, at ¶ 146. The State presented overwhelming evidence that Robinson committed the charged offenses. In that circumstance, we cannot find defense counsel deficient for making a barebones Crim.R. 29 motion when such a motion was correctly overruled.

{¶ 29} Finally, Robinson cumulative-error argument also fails. Under the cumulative-error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v.*

*Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. As we did not find that defense counsel was deficient at any point, we cannot find cumulative error.

**{¶ 30}** Given the evidence against Robinson and the absence of support in the record to show that counsel performed deficiently, the claim of ineffective assistance must fail.

**{¶ 31}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 32}** We have overruled both assignments of error. As such, the trial court's judgment is affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Ian A. Richardson
Charles W. Slicer, III
Hon. Douglas M. Rastatter