OPINION
{¶ 1} Appellant Dustin S. Andric appeals his conviction following a bench trial on two counts of misdemeanor assault. He argues that photos of the victims' injuries were not properly authenticated, and that the convictions are against the manifest weight of the evidence. Although the photos were not authenticated by the person who took them, there is no requirement in Ohio evidence law that this occur. The photos were authenticated by the officer who actually saw the injuries. This type of authentication is sufficient. Appellant's manifest weight argument is essentially that he presented a self-defense argument and that his evidence was more credible than the victims' testimony. The two victims both testified that Appellant started the fight and was not provoked, and the trial judge decided to give more weight to this testimony than to Appellant's evidence. There was no manifest miscarriage of justice in this case, and the judgment is affirmed.
 {¶ 2} On February 16, 2006, Harry Ehrhart and Barbara McClish filed separate criminal complaints against Appellant in the Columbiana County Municipal Court. Each complaint alleged one count of assault, R.C. § 2903.13(A), a first degree misdemeanor. The charges arose out of injuries that Appellant inflicted upon Harry and Barbara on February 15, 2006. Appellant was indigent and the court appointed counsel to represent him. The case went to bench trial on May 3, 2006.
 {¶ 3} The evidence at trial indicated that the victims are brother and sister and are both over 50 years old. Appellant was 22 years old at the time the crime occurred. Appellant was dating Barbara's daughter, Kelly Stewart, at the time. Harry and Barbara were at their mother's house, Kelly's grandmother, at 36794 Eagletown *Page 2 
Road in Lisbon, Ohio, on February 15, 2006. Kelly Stewart was also present outside the house. Harry arrived sometime after 9:00 a.m. to pick up Barbara and take her shopping. Harry testified that Appellant's car was there, blocking the driveway and dripping some type of liquid. Harry said to Appellant: "Well, what did you do, blow up another one?" (Tr., p. 46.) Harry turned to walk into the house, and Appellant came up behind him screaming. Appellant punched Harry four or five times in the back of the head, knocking him against his mother's car. (Tr., p. 47.) Harry tried to get to the door leading into the kitchen, and Appellant hit him again. Barbara came out of the house, and Appellant knocked her against an air compressor that was sitting in the garage. She received numerous bruises from colliding with the compressor.
 {¶ 4} Harry and Barbara managed to get into the kitchen. Appellant hit Harry again, forcing him into a cabinet and splitting his lip. (Tr., p. 48.) By this time their 82-year old mother had rolled her wheelchair to the kitchen. She told Appellant: "Get the hell out of my house" and Appellant told her to "shut up" and used profanity. (Tr., p. 48.) Harry testified that he believed Appellant hit his mother at this time, leaving a mark on her arm. (Tr., p. 49.) Harry tried to call the police, but Appellant grabbed the telephone and pulled it off the wall. Barbara found a cordless phone and called the police.
 {¶ 5} Harry testified that he had never met Appellant before that day, and did not make any threats or threatening gestures toward Appellant. He testified that he was walking away from Appellant when he was attacked in the back of the head. (Tr., p. 57.) *Page 3 
 {¶ 6} Barbara's testimony was essentially identical to Harry's. She had spent the night at her mother's house, and Harry arrived to take her shopping. She heard raised voices outside, and she then saw Appellant hit Harry from behind. She went into the garage, and Appellant pushed her into an air compressor. When they all got into the kitchen, she saw Appellant hit Harry again. Harry hit his head on a table and chair leg, splitting his lip. She stated that Appellant hit Harry a third time when they were back in the garage. She sustained injuries and went to the emergency room. X-rays were taken, and she was treated for bruises but no broken bones were found.
 {¶ 7} Kelly Stewart testified that she was at her grandmother's house on February 15, 2006, to help Appellant paint a door on his car. She stated that Appellant did not know Harry Ehrhart at the time. She testified that Harry arrived, got out of his truck, and started arguing with Appellant. (Tr., p. 73.) She was not sure why they were arguing, although she thought it had something to do with Appellant driving by Harry's house late at night. (Tr., p. 74.) She stated that Harry threatened to beat up Appellant. After this threat, she did not see Appellant or Harry hit each other because she was nervous and flustered at the time. She testified that Harry and Appellant were yelling at each other but not fighting, but that her mother then jumped on Appellant's back and fell off, hurting herself. Kelly went into the house to call the police,. She stated that she was the one who grabbed the phone and tore it off the wall. She did not know why she wanted to call the police. She just remembered attempting to do so and then pulling the phone off the wall. For the most part, Kelly's testimony was that she did not actually see the fighting, and that *Page 4 
most of the encounter between Appellant and the victims involved only yelling but no fighting. She surmised that Appellant must have hit Harry once, and she did not see any injuries on Harry by the time she left.
 {¶ 8} Appellant testified that he had lived at Kelly Stewart's grandmother's house for a few weeks, and was actually living there with Kelly on the day the assaults occurred. He was painting his car on the morning of February 15, 2006, when Harry arrived in his truck. He had never met or spoken to Harry before, although he had seen him once. Appellant testified that Harry immediately accused him of breaking into his house and of driving up and down his driveway. (Tr., p. 107.) He testified that Harry said, "he was gonna to kick my rear". (Tr., p. 108.) Appellant then testified: "And I told him, I was like, `If you're gonna stand here and threaten me, just do it.' You know, like I really care. I ain't scared of some old man gonna beat me up." (Tr., p. 108.)
 {¶ 9} Appellant testified that Harry started throwing his hands around, and the two of them began "wrestling" face to face. (Tr., p. 108.) He stated that he never hit Harry in the back of the head while they were "wrestling". Barbara came out of the house while they were "wrestling" and she was knocked over. The "wrestling" moved into the kitchen. Harry then stood up and took a swing at Appellant, and at this point Appellant hit Harry in the mouth. (Tr., p. 109.) Appellant then left.
 {¶ 10} Deputy Kip Dowling, who was called to the scene when the assault occurred, testified that Harry had a "busted lip" and blood around his mouth. He stated that Barbara had swelling and bruising on her back. The prosecutor showed *Page 5 
him a piece of paper with six small photos printed on it, listed as State's Exhibit A. He testified that he took the top two photos of Harry showing the cut lip. He stated that he did not take the bottom four photos of Barbara's injuries. He testified that he asked a female dispatcher to take those photos. (Tr., p. 8.) He testified that these photos accurately and precisely depicted the condition of Mr. Ehrhart and Ms. McClish on February 15, 2006. (Tr., pp. 8-9.) On cross-examination, he was asked if he actually saw the injuries, even if he had not taken all the photos, and he testified that, "I did actually see them." (Tr., p. 14.)
 {¶ 11} On May 3, 2006, the court filed its judgment entry, finding Appellant guilty of both charges. The judge sentenced Appellant to the full 180-day jail sentence for each count, to run concurrently. The judge suspended 90-days of the sentence, and placed Appellant on three years of probation. He was required to do community service, attend anger management classes, have no contact with the victims, and pay a fine. This timely appeal followed on May 10, 2006.
 ASSIGNMENT OF ERROR NO. 1 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE STATE TO INTRODUCE PHOTOGRAPHS OF THE ALLEGED INJURIES WITHOUT THE PROPER FOUNDATION."
 {¶ 13} Appellant argues that Deputy Dowling did not take some of the photographs that were introduced into evidence and was not present in the room when they were taken, thus, he could not have properly authenticated the photos. The admission of photographs into evidence at trial is a decision left to the sound *Page 6 
discretion of the trial judge. State v. Smith, 97 Ohio St.3d 367,2002-Ohio-6659, 780 N.E.2d 221, ¶ 33. Evid.R. 901 sets forth the requirements for authenticating evidence, including photographic evidence: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 14} In Ohio, any person who has knowledge of the subject matter of the photo can authenticate it: "To authenticate photographs, there is no need to call the individual who took the photographs. A witness with personal knowledge of the subject of the photograph may authenticate it by testifying that the photograph fairly and accurately depicts the subject at the time the photographs were taken." State v. Bailey, 8th Dist. No. 81498, 2003-Ohio-1834, ¶ 37, citing State v. Hannah (1978),54 Ohio St.2d 84, 88, 374 N.E.2d 1359.
 {¶ 15} Deputy Dowling testified that the photographs of Ms. McClish accurately depicted her condition at the time the photo was taken, and he stated that he had seen her injuries personally. Appellant is simply mistaken when he argues that the deputy did not see Barbara McClish's injuries, because he clearly testified that he did see them. (Tr., pp. 9, 14.) Therefore, a sufficient foundation was laid to admit the photographs into evidence.
 {¶ 16} Appellant also contends that Ms. McClish contradicted Deputy Dowling by testifying that the photos were not of her. The trial transcript indicates that Barbara did hesitate momentarily when identifying the photos, and originally thought *Page 7 
they were of her brother, but she then corrected herself and acknowledged that the photos showed her bruises. (Tr., pp. 23-24.)
 {¶ 17} Because there is no error in the admission of the photographs into evidence, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 18} "THE CONVICTION OF APPELLANT UPON A CHARGE OF ASSAULT IN VIOLATION OF OHIO REVISED CODE SECTION 2903.13 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 19} When reviewing the manifest weight of the evidence in a criminal trial, an appellate court, ? `weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The appellate court's discretion to grant a new trial, ? `should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"Id., quoting Martin. A reviewing court should not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56,59, 526 N.E.2d 304. *Page 8 
 {¶ 20} Appellant's argument is that he struck Harry Ehrhart in self-defense and accidentally pushed or bumped Barbara McClish while he was "wrestling" with Harry, and that this should not constitute criminal assault. He believes his testimony, combined with that of Kelly Stewart, was more credible than that of the two victims. Appellant's argument is not persuasive.
 {¶ 21} Assuming arguendo, that Appellant's testimony was credible, his self-defense argument must fail, because he did not establish the elements of self-defense. In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.State v. Williford (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, citing State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, 12 O.O.3d 84, paragraph two of the syllabus.
 {¶ 22} Appellant testified that he was not concerned about any threats from "some old man" and that he encouraged Harry to start fighting. (Tr., p. 108.) Appellant's own testimony indicates a complete lack of any belief that he was in imminent danger. Harry and Appellant were also outside when the fight started, and there is no indication that Appellant attempted or even considered retreating in order to avoid a fight. Thus, Appellant failed to establish any of the elements of self-defense. He was at fault by encouraging Harry to start a fight. His own testimony indicates no belief that he was in any type of danger. There is no evidence that *Page 9 
Appellant tried to retreat. Since the burden is on the defendant to prove by a preponderance of the evidence that he acted in self-defense, he needed to put forth some evidence to substantiate each element of the affirmative defense. Appellant's testimony fails to establish this defense.
 {¶ 23} Second, it was within the province of the trier-of-fact, which in this case was the judge in a bench trial, to believe or disbelieve the testimony of each witness. Obviously, the judge found the victims' testimony to be more credible. Both Harry and Barbara describe essentially the same story, in which Harry made an offhand comment to Appellant, walked away, and was attacked by Appellant a number of times. Furthermore, Appellant's testimony and that of Kelly Stewart did not completely agree and do not present a unified story of Appellant's supposed self-defense theory. Kelly stated that the fight started because Harry was upset with Appellant driving by his house early in the morning, even though the two supposedly had never met. Appellant stated that the argument started when Harry accused him of breaking into his house. Kelly noted that Harry took a number of swings to punch Appellant, but said nothing about wrestling. Appellant, though, describes the encounter primarily as wrestling. These types of inconsistencies could easily allow the trier-of-fact to question the credibility of both Kelly Stewart's and Appellant's testimony. There is no manifest injustice in this case given the weak evidence presented by Appellant, and the fact that his evidence, even if believed, did not establish the elements of self-defense. Therefore, Appellant's second assignment of error is overruled. *Page 10 
 {¶ 24} In conclusion, Appellant has failed to show any error in the admission of photographs depicting the injuries of the victims, and has failed to demonstrate any manifest injustice in the verdict based on the weight of the evidence. Appellant's two assignments of error are overruled, and the judgment of the Columbiana County Municipal Court is affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1