[Cite as *State v. Ursic*, 2019-Ohio-5088.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BENJAMIN URSIC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 HA 0006

---

Criminal Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CRI 2017-0083

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed.

*Atty. T. Owen Beetham*, Harrison County Prosecutor and *Atty. Jeffrey J. Bruzzese*, Assistant Prosecuting Attorney, 111 W. Warren Street, P.O. Box 248, Cadiz, Ohio 43907, for Plaintiff-Appellee

*Atty. Rhys B. Cartwright-Jones*, 42 N. Phelps St., Youngstown, Ohio 44503-1130, for Defendant-Appellant.

Dated: December 9, 2019

_____

**WAITE, P.J.**

{¶1} Appellant Benjamin Ursic appeals his conviction and sentencing on two counts of felony assault on a police officer, and one count of failure to comply with an order or signal of a police officer, in the Harrison County Common Pleas Court. Appellant argues the offenses should have merged for sentencing and challenges the sufficiency and weight of the evidence at trial. Based on the following, we conclude the offenses are not allied offenses of similar import and the trial court was correct when it did not merge the convictions for sentencing. Moreover, the evidence presented at trial was sufficient and not against the manifest weight of the evidence. Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2} On June 4, 2017, at approximately 3:00 a.m. Appellant's neighbor, Howard Landkrohn ("Landkrohn"), called police after hearing two gun shots coming from Appellant's residence. While still on the phone with the dispatcher, Landkrohn observed Appellant drive away from his residence in his white Jeep. Landkrohn described his neighbor's Jeep to the dispatcher, including that it had a broken tail light. While en route to Appellant's residence, Harrison County Sheriff's deputies Tony Sedgmer and Ben Chaney, driving separate police vehicles, spotted a white Jeep sitting at an intersection as they approached on US Route 250. A dash camera video from Deputy Chaney's police cruiser was admitted at trial and shown to the jury. The video shows that the deputies slowed as they approached the intersection and Deputy Sedgmer aimed a spotlight in the driver's side window. Being familiar with Appellant from previous

interactions, he recognized Appellant as the driver. Both deputies immediately activated their lights and sirens and attempted to surround Appellant's vehicle. Appellant slowly emerged from the intersection on to US Route 250. He proceeded to maneuver around the two police vehicles and quickly sped off. The video shows the damaged tail light on the Jeep as noted by Landkrohn in his 911 call. Appellant fled on Route 250 for a short time before turning on to a nearby dirt road and then cutting through a field filled with boats and vehicles to get back onto North Bay Road. The pursuit continued on North Bay Road, a residential neighborhood, for about three minutes at approximately 70 mph before the deputies radioed that they were calling off the chase to avoid a traffic accident.

{¶3} The deputies drove to Appellant's residence where Muskingum Watershed Conservancy Rangers were interviewing Appellant's girlfriend. They continued their investigation there until another call came in that a vehicle matching the description of Appellant's Jeep was sitting at the top of a hill on an old logging road in the woods with its headlights on. While this road was now used by ATVs, it was not open to vehicular traffic. Both deputies and Ranger Troy Noice drove to the logging road. They all exited their vehicles. The deputies walked ahead, periodically switching their flashlights on and off in an attempt to see where they were going but avoid detection. Ranger Noice was farther behind them but was wearing a body camera which recorded a portion of the incident. The recording was admitted at trial and played for the jury. The deputies continued walking side-by-side up the road until they could see a white Jeep facing downhill towards them with the engine running and the headlights on. As they approached within approximately 50 yards from the Jeep, Appellant was spotted inside. According to the testimony of Deputy Sedgmer at trial and as can be seen on the body

Case No. 18 HA 0006

camera video presented to the jury, Appellant began driving towards the deputies, revving the engine. Deputy Sedgmer ordered Appellant to stop. Appellant continued down the hill toward the deputies, forcing them to take cover behind nearby trees. Appellant continued driving downhill toward the deputies until swerving off the road and hitting the tree the deputies were hiding behind. After hitting the tree, Appellant reversed direction on the road and attempted to flee back up the hill in the opposite direction from where he had come. He eventually abandoned the vehicle and fled on foot. Appellant was apprehended later that morning by Ranger Noice as he was walking in Landkrohn's backyard.

{¶4} On December 11, 2017, Appellant was indicted by the Harrison County Grand Jury on two counts of felony assault on a police officer in violation of R.C. 2903.11(A)(2) and (D)(1)(a), felonies in the first degree; and one count of felony failure to comply with an order of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree. The matter proceeded to a jury trial on October 4, 2018. Appellant was found guilty on all counts. The trial court sentenced Appellant to four years of incarceration on each conviction for assault on a police officer and one year for failure to comply, to be served consecutively, for a total stated prison term of nine years.

{¶5} Appellant filed this timely appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

CONSECUTIVE [SIC] SENTENCES WERE MANDATED AS THE APPELLANT'S CONVICTION FOR FAILURE TO COMPLY SHOULD HAVE MERGED INTO HIS CONVICTIONS OF FELONIOUS ASSAULT ON POLICE OFFICERS.

<u>Case No. 18 HA 0006</u>

**{¶6}** In Appellant's first assignment of error he claims consecutive sentencing was erroneous, here. He challenges his sentence, contending that his sentence for felony failure to comply should have merged with his sentences for felony assault, because they are allied offenses of similar import. Appellant contends that the felony assault on a police officer came as he was attempting to flee, and thus his convictions for failure to comply and for assault on a police officer stem from the same, single event and should have been merged.

**{¶7}** In response, the state argues that after Appellant originally fled the scene and the pursuit by police halted, this resulted in one completed action, resulting in a charge for failure to comply. The two charges of felony assault on a police officer occurred when Appellant later drove his vehicle at police until they took cover behind a tree and Appellant intentionally struck the tree with his vehicle. The state argues this is reinforced by the fact that, rather than following his trajectory of continuing down the hill to the main road after striking the tree with his vehicle, Appellant attempted to flee by turning around and driving back up the hill in the opposite direction. Hence, his failure to comply arose out of a separate event from his attempt to assault the two officers, an event that was completed when they called off their pursuit.

**{¶8}** The question of whether crimes are allied offenses arises from the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, which protects individuals from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). R.C. 2941.25 codifies this protection under Ohio law:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶9} Whether two offenses are allied offenses is a question of law and an appellate court must conduct a *de novo* review. *State v. Burns,* 7th Dist. Mahoning No. 09 MA 193, 2012-Ohio-2698, ¶ 60. At the outset, we note that both Appellant and the state cite caselaw that pertains to the Ohio Supreme Court's previous two-part test for allied offenses set forth in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The test in *Johnson* was subsequently modified and expanded in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. In *Ruff*, the Ohio Supreme Court created a three-part, fact-specific analysis that looks at the defendant's conduct, the animus, and the import. *Id.* at ¶ 26. Specifically, a court must consider: (1) whether the offenses are dissimilar in import or significance, meaning whether each offense caused a separate and identifiable harm; (2) whether the offenses were separately committed, and (3) whether the offenses were considered with separate animus or motivation. *Id.* If the answer to any of these questions is "yes," then the offenses do not merge. The fact-specific nature of the analysis requires a case-by-case consideration rather than application of a bright-line rule. *Id.*

{¶10} The offenses at issue are felonious assault of a police officer and felony failure to comply with an order or signal of a police officer. R.C. 2921.331, felony failure to comply with order or signal of police, provides:

(B)  No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

* * *

(5)(a)  A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

* * *

(ii)  The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶11}  R.C. 2903.11(A)(2) and (D)(1)(a) govern felony felonious assault of a police officer, and states:

(A)  No person shall knowingly do either of the following:

* * *

(2)  Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

* * *

(D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided for in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree. If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree.

{¶12} Appellant argues that his failure to comply "with the original order to stop by police, was the same action that resulted in his being charged with felonious assault." (Appellant's Brf., p. 7.) Appellant's merger argument essentially hinges on the assertion that his failure to comply began when the deputies first encountered him on Route 250 and persisted through Appellant temporarily alluding police, hiding in the woods, and continued to Appellant's attempt to strike the deputies with his vehicle before fleeing again. Appellant argues that the incident involved one continuous course of conduct from first encountering the officers to his later fleeing on foot after striking the trees behind which they took cover. The record does not support Appellant's contention.

{¶13} Deputy Sedgmer testified at trial that the deputies first made contact with Appellant on U.S. Route 250. Both officers activated their lights and sirens and Appellant fled, heading westward on U.S. Route 250. This pursuit continued for several minutes, during which time Appellant exited onto a dirt road at approximately 40 miles per hour. He then turned off into a field where boats and vehicles were stored. He utilized the field as a shortcut on to North Bay Road, a residential area, where he was pursued for about three minutes while traveling at approximately 70 miles per hour before the deputies called off the chase due to a substantial risk of injury to the public. The active pursuit

concluded. The deputies then traveled to Appellant's residence to interview Appellant's girlfriend and possibly await Appellant's return, as Appellant's whereabouts were unknown. Ranger Noice was already at Appellant's residence.

**{¶14}** Deputy Sedgmer testified that while they were at Appellant's residence, a call came in through the dispatcher that Appellant's Jeep was spotted by an area resident at the top of a hill on an old logging road. Deputy Sedgmer testified,

> We immediately assumed it was [Appellant] and that's how, you know, we had missed him. He had taken that four wheeler trail and we drove right past it. And the ranger, Ranger Noice, had been coming in stated to me prior that he never saw him come back out so we assumed that that was him and we immediately left [Appellant's] residence to go back to where that four wheeler trail was at or the trail that went up into the woods.

(10/4/18 Tr., p. 143.)

**{¶15}** At that point, the deputies and Ranger Noice left Appellant's residence and drove to the area where the vehicle was spotted. The deputies arrived first, got out of their vehicles, and began walking together uphill on the trail. (10/4/18 Tr., p. 144.) The deputies used their flashlights intermittently in order to find their footing as they walked along the trail, hoping to avoid detection by Appellant. Appellant's vehicle continued sitting stationary on top of the hill with the headlights on. When the deputies got within 50 yards of the vehicle, Deputy Sedgmer testified that he aimed his flashlight at the vehicle and spotted Appellant in the driver's seat. As the vehicle began moving toward them, the deputies transitioned from their flashlights to their firearms. Deputy Sedgmer

testified, "as he approached us he got extremely close to us we were yelling, 'Stop. Sheriff's office. Stop. Sheriff's office. Stop.' " (10/4/18 Tr. pp. 146-147.) Appellant did not stop his vehicle. The deputies noted there were trees directly to their right. Deputy Sedgmer testified:

> As we start stepping to our right the vehicle was from me to probably the desk away and he swerves to his left so towards my direction, myself and Deputy Chaney's direction. We get behind a tree and he comes to a stop up against that tree. It was within -- I could touch the hood of his car. It was at that point my gun is on him with my flashlight. I can see him in the driver's seat. Deputy Chaney reaches over and grabs ahold of the passenger's side door and tries to yank it open. As he does that Mr. Ursic is revving his engine, which I left that part out. I apologize. He was revving his engine as if to try and back back up again and he begins to move back to back up like he's going to attempt to turn around and go back up the hill. * * *
>
> When he went back up the hill he had his jeep I want to say red lined. He had it pegged to where it was constantly backfiring the whole way up the hill * * * throwing mud, rocks and debris all over us.

(10/4/18 Tr., pp. 147-148.)

{¶16} The law on merger remains fact-specific under *Ruff*. Where there are multiple offenses and the resulting harm is "separate and identifiable," the offenses are of dissimilar import. *Id.* at ¶ 1.

Case No. 18 HA 0006

**{¶17}** Contrary to Appellant's assertions, the facts in this case do not demonstrate one continuous incident which began with the encounter on Route 250 and encompassed the actions that took place on the logging road. This record reveals that the initial encounter concluded when pursuit was ended due to the officers' concerns about public safety. The second encounter on the hill was distinct both in time and place. Rather than fleeing, Appellant appeared to be hiding or perhaps awaiting the arrival of the deputies as he sat in his vehicle on top of the hill with his headlights on. Appellant's decision to drive toward the deputies when they signaled from fifty yards away was clearly not an attempt to flee. Evidence shows it was an overt attempt to harm the deputies. Continuing to drive his vehicle downhill toward two armed deputies who were on foot and swerving in their direction in an attempt to strike them as they took cover is the exact opposite of fleeing. This reveals "separate and identifiable" conduct which served as the basis for the separate offenses at issue. The offenses were committed at separate times, as the deputies had called off their first encounter leading to pursuit and went to Appellant's residence to begin their investigation. Their second encounter with Appellant, begun due to a second 911 call, did not involve a pursuit because Appellant was not actively engaged in flight. Again, these offenses took place at different times and locations and involved separate facts. Thus, under the *Ruff* test and the facts of this case, the offenses are not allied offenses of similar import. The trial court was correct in not merging the offenses for sentencing purposes.

**{¶18}** Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

<u>Case No. 18 HA 0006</u>

THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF FELONIOUS ASSAULT AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} In his second assignment of error, Appellant argues sufficiency and manifest weight of the evidence.

{¶20} "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin–McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶21} "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. Jefferson No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). To discharge the state's burden when prosecuting a criminal offense, "'probative evidence must be offered' on 'every material element which is necessary to constitute the crime.'" *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 8, citing *State v. Martin*, 164 Ohio St. 54, 57, 128 N.E.2d 7 (1955). In a sufficiency review, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34.

{¶22} This is distinct from a review of the manifest weight of the evidence, which focuses on the state's burden of persuasion. *Id.* A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1st Dist.1983).

**{¶23}** A reversal should be granted only "in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Andric*, 7th. Dist. Columbiana No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *Martin* at 175. Determinations regarding witness credibility, conflicting testimony and evidence weight "are primarily for the trier of the facts." *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 995, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh all evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It is in the purview of the jury whether to believe some, all or none of the testimony from witnesses and the jury can parse out credible portions of testimony from incredible portions. *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). Moreover, when presented with two fairly reasonable perspectives regarding the evidence or with two conflicting versions of events, neither of which can be ruled out as unbelievable, we will not choose which one is more credible. *State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶24}** Appellant takes issue with several portions of the deputies' testimony, claiming the state failed to establish beyond a reasonable doubt that Appellant knowingly intended to cause them physical harm. Appellant asserts that the testimony from deputies

that they were switching their flashlights on and off while on the logging trail could have caused Appellant to be blinded or disoriented, rendering him unable to see where he was driving. Appellant also argues that Deputy Sedgmer's testimony that Appellant had his headlights on them as they approached contradicts Deputy Sedgmer's testimony that Appellant "looked directly at us" when they approached, as the headlights would have rendered Deputy Sedgmer unable to see into the vehicle. (10/4/18 Tr., p. 202.) Finally, Appellant contends that the testimony from both deputies that Appellant backed up and drove in the other direction, ultimately abandoning the vehicle and fleeing on foot, also shows Appellant did not knowingly intend to cause harm to the deputies and further demonstrates the state's failure to establish all the necessary elements of felony assault on a police officer.

{¶25} As the dash camera video was played to the jury, Deputy Sedgmer testified regarding the pursuit. The dash camera video, which begins after the first 911 call as the deputies were initially traveling to Appellant's residence, shows the initial stop and Appellant's actions in fleeing from the officers. It shows the deputies traveling at a high rate of speed with lights and sirens activated. At 8 minutes 22 seconds, with lights and sirens still activated, the deputies encounter Appellant's Jeep at an intersection. The video follows the pursuit down US Route 250, then the turn on to the dirt road, through the field and back on to a residential street. Other vehicles can be seen moving off of the road. At 11 minutes 10 seconds the deputies, speaking through radio dispatch, express concern about the high rate of speed as they traveled through a residential neighborhood, and noted that Appellant would be considered armed and dangerous. At 11 minutes 20 seconds the deputies acknowledge that they lost sight of Appellant's vehicle. Deputy

Sedgmer calls off the pursuit because he does not want to cause a "Code 4 which is a traffic accident with injuries." (10/4/18 Tr., p. 167.) The deputies instituted a search of the area with their spotlights before going to Appellant's residence.

{¶26} The state presented testimony from Deputy Chaney regarding both incidents. Deputy Chaney corroborated Deputy Sedgmer's testimony regarding the attempted stop of Appellant and the subsequent pursuit. He also testified that both deputies returned to Appellant's home after the chase was called off. Approximately 15 minutes later, they were notified by dispatch that a second 911 call had been made regarding the vehicle, which was spotted on the logging road. Deputy Chaney described the incident on the logging road. He testified that as they walked up the road they saw headlights and could hear an engine revving loudly. He testified that both deputies were using the flashlights attached to their firearms and turning them on intermittently to see where they were walking, but also to attempt to avoid detection by leaving them on. He testified that the Jeep was "trying to creep his way down" the hill, as it was steep and rutted. (10/4/18 Tr., p. 202.) When the Jeep was approximately fifty yards away with its headlights shining on the deputies, Deputy Chaney testified that they turned on their flashlights and announced their presence. The Jeep continued to come toward them. According to Deputy Chaney, "we looked directly at him, he looked directly at us, he then continued to come our way." (10/4/18 Tr., p. 202.) Deputy Chaney testified, "I recall the engine revving. He began to drive straight towards us." (10/4/18 Tr., p. 202.) They demanded he stop and deployed their weapons. "It was apparent that he was not going to [stop] so at the last split second we seen a tree, got behind the tree and the jeep then came right up to us in an obvious attempt to hit us before trying to get turned around."

Case No. 18 HA 0006

(10/4/18 Tr., p. 203.) Photos of the Jeep stuck in the mud on the logging road taken the following morning were admitted at trial. The jury was also taken out to view the logging road.

**{¶27}** The state presented video from a body camera worn by Ranger Noice during the incident on the logging road. Ranger Noice testified at trial that he arrived shortly after Deputies Sedgmer and Chaney. A review of the body camera video shows the two deputies walking ahead up the logging road intermittently using their flashlights. Ranger Noice also turned his flashlight on intermittently. At approximately one minute and five seconds into the video, a pair of headlights is seen uphill at a distance. Ranger Noice can be heard saying that the Jeep is coming down the hill. At one minute 47 seconds one of the deputies can be heard over the radio saying that Appellant almost hit them with the vehicle and that Appellant was attempting to drive back up the hill.

**{¶28}** Appellant challenges the sufficiency of the evidence regarding both the felony failure to comply and felony assault on police officers. When viewing the evidence in a light most favorable to the state (the testimony from both deputies, Ranger Noice, the dash camera video, body camera video, and photographs of the scene) this evidence, if believed, was sufficient to establish that Appellant acted knowingly beyond a reasonable doubt.

**{¶29}** Regarding manifest weight, where, as here, the state presented corroborating testimony from both deputies, Ranger Noice, and dash camera and body camera videos from portions of the incident, we must defer to the jury's determination as to the credibility of the witnesses and evidence presented. Appellant's convictions were not against the manifest weight of the evidence.

**{¶30}** Appellant's second assignment of error is without merit and is overruled.

**{¶31}** Based on the foregoing, both of Appellant's assignments of error are without merit and the judgment of the trial court is affirmed in full.

Donofrio, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**